No objections to this Report & Recommendation ("R&R") have been received.  Accordingly, I review it for clear error.  I find no error, clear or otherwise, and adopt the R&R as the decision of the Court.  The Clerk of Court is respectfully directed to close the case.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SO ORDERED.

*Cathy Seibel*

CATHY SEIBEL, U.S.D.J.

---

CALVIN TYRELL,

                              Petitioner,

        - against -

WILLIAM LEE, Superintendent,

                              Respondent.

11 Civ. 3348 (CS)(LMS)          1/6/16

**REPORT AND
RECOMMENDATION**

---

**TO: THE HONORABLE CATHY SEIBEL, U.S.D.J.[1]**

On May 6, 2011, Petitioner Calvin Tyrell ("Petitioner"), proceeding *pro se*, filed a petition for a writ of habeas corpus ("petition") pursuant to 28 U.S.C. § 2254, challenging his 2008 judgment of conviction for one count of Manslaughter in the First Degree (N.Y. Penal Law § 125.20), one count of Assault in the First Degree (N.Y. Penal Law § 120.10[1]), one count of Criminal Use of a Firearm in the First Degree (N.Y. Penal Law § 265.09[1]), and one count of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03), and his aggregate indeterminate term of imprisonment of from thirteen and one-third to forty years.  Pet., at ¶ 5, D.E. 1; T: 1175-1178, D.E. 31; S: 17-20, D.E. 33.[2]  Petitioner simultaneously sought a stay of his petition in order to exhaust an additional claim in state court.  Pet., at ¶ 12-13, D.E. 1.

---

[1] By order dated June 16, 2011, this matter was referred to me by the Honorable Cathy Seibel, U.S.D.J., to whom the matter was assigned.  Order of Reference, June 16, 2011, D.E. 6.

[2] "Pet." refers to Petitioner's initial petition filed on May 6, 2011 (D.E. 1).  "Am. Pet." refers to Petitioner's amended petition filed on December 6, 2012 (D.E. 21).  Numerals preceded by "H" refer to Petitioner's pre-trial hearing, those preceded by "T" refer to the transcript of Petitioner's trial, those preceded by "T2" refer to the separately paginated transcript of the proceedings held on May 5, 2006, and those preceded by "S" refer to the transcript of Petitioner's sentencing.

Following the Court's granting of a stay, Petitioner filed an amended petition on December 6, 2012.  Am. Pet., D.E. 21.

Petitioner asserts the following seven grounds for relief: (1) Petitioner was deprived of the due process of law and a fair trial when the trial court permitted the prosecutor to cross-examine Petitioner regarding a 1988 misdemeanor conviction; (2) Petitioner was deprived of due process and a fair trial when the prosecutor suggested that marijuana was part of Jamaican culture; (3) Petitioner was deprived of due process and a fair trial by the lower court's "cumulative evidentiary errors"; (4) Petitioner's Fifth Amendment rights were violated when the police engaged in custodial interrogation after Petitioner requested to speak to an attorney; (5) the state court unreasonably applied clearly established Supreme Court precedent in rejecting Petitioner's affirmative defense of justification and in failing to "weight [sic] the evidence most favorable to Petitioner"; (6) Petitioner's "remaining claims not address [sic] herein" entailed an unreasonable application of Supreme Court precedent or were contrary to such precedent; and (7) Petitioner was deprived of the effective assistance of appellate counsel by counsel's failure to claim on appeal that Petitioner's trial counsel provided the ineffective assistance of counsel.  Am. Pet., at 2-3, D.E. 21.

For the following reasons, I conclude, and respectfully recommend that Your Honor should conclude, that this Petition should be dismissed in its entirety.


**BACKGROUND**

I.    **The Crime**

On the night of December 21, 1991, into the early morning of December 22, 1991, Petitioner was on the front porch of a private residence, collecting the admission fee to a reggae

party being held inside the residence. Petitioner collected the admission fee from Carlos

Robinson, and an argument then ensued regarding the amount of the fee. T: 566, 570, 650, 652-

53, 779-81, D.E. 32, 28. When Petitioner refused Robinson's request to refund his money,

Robinson threw a bottle at Petitioner, but missed. Petitioner then drew a handgun from his rear

waistband and fired two or three shots toward Robinson from a distance of approximately five

feet. T: 657-58, 673-74, 698-700, 782, 785-86, D.E. 28. Ansel Barret, who had been trying to

defuse the dispute, was shot in the neck and died. T: 656-57, 756-59, 772, D.E. 28. Robinson

was shot in the eye, causing him to lose his eyesight in his right eye and the hearing in his right

ear. T: 662, 735-36, 738-39, D.E. 28. Thereafter, Petitioner went a short distance away to his

girlfriend's house, asked her for twenty dollars, and then left. T. 606-09, D.E. 32. Despite the

efforts of various law enforcement agencies, Petitioner could not be located and remained at

large. T. 981-83, 996-1006, 1012, D.E. 29. In September of 2005, Deputy U.S. Marshal David

Rosen apprehended Petitioner in Florida. Petitioner was living under the assumed name Chris

Riley. T2. 16-30, D.E. 30.

## II.    **Procedural History**

On October 7, 2005, the Westchester County grand jury charged Petitioner with two

counts of Murder in the Second Degree (N.Y. Penal Law §§ 125.25[1], [2]), one count of

Attempted Murder in the Second Degree (N.Y. Penal Law §§ 110/125.25[1]), two counts of

Assault in the First Degree (N.Y. Penal Law §§ 120.10[1], [3]), two counts of Criminal use of a

Firearm in the First Degree (N.Y. Penal Law §§ 265.09[1]),[3] and two counts of Criminal

---

[3] By Decision and Order dated January 23, 2006, the Supreme Court of the State of New
York, Westchester County (Dibella, J.), granted the Prosecution's request to amend the
indictment and replace the ninth count of the indictment, N.Y. Penal Law § 265.09(1), with N.Y.
Penal Law § 265.03(2). The accompanying text of the charge was not altered. Resp't's Ex. 4 at
1, D.E. 23.

Possession of a Weapon in the Second Degree (N.Y. Penal Law §§ 265.03[1], [3]).  Resp't's Ex.
1, D.E. 23.[4]  On May 10, 2006, at the conclusion of a jury trial, Petitioner was convicted of one
count of Manslaughter in the First Degree (N.Y. Penal Law § 125.20), one count of Assault in
the First Degree (N.Y. Penal Law § 120.10[1]), one count of Criminal Use of a Firearm in the
First Degree (N.Y. Penal Law § 265.09[1]), and one count of Criminal Possession of a Weapon
in the Second Degree (N.Y. Penal Law § 265.03).  T: 1175-78, D.E. 31.  On June 21, 2006,
Petitioner was sentenced to an aggregate indeterminate term of imprisonment of from thirteen
and one-third to forty years.  S: 17-20, D.E. 33.[5]

Through counsel, Petitioner appealed his conviction on the following ten grounds: (1) the
trial court erred in permitting the prosecution to cross-examine petitioner regarding the underlying
facts of a 1988 misdemeanor conviction, (2) the trial court improperly modified its *Sandoval*[6]
ruling by permitting the prosecution to question petitioner about a marijuana conviction, (3)
petitioner did not "open the door" to cross-examination regarding the marijuana conviction, (4) the
trial court erred in permitting the prosecution to suggest that defendant was more likely to use
marijuana because he was Jamaican, (5) the trial court erred in permitting cross-examination
regarding a 2002 assault conviction, (6), the trial court's *Sandoval* error was reversible because the
evidence against petitioner was not overwhelming and because Petitioner's credibility was crucial

---

[4] All citations to "Resp't's Ex. ___" refer to exhibits submitted to the Court as part of
Respondent's Memorandum of Law in opposition to the instant petition.
[5] The specific breakdown of Petitioner's sentence is as follows: Petitioner was sentenced
to an indeterminate term of imprisonment of from eight and one-third to twenty-five years for his
conviction of Manslaughter in the First Degree, to be served consecutively with an indeterminate
term of imprisonment of from five to fifteen years for his conviction of Assault in the First
Degree, both sentences to be served concurrently with an indeterminate term of imprisonment of
from seven and one-half to fifteen years for his conviction of Criminal Use of a Firearm in the
First Degree and an indeterminate term of imprisonment of from five to fifteen years for his
conviction of Criminal Possession of a Weapon in the Second Degree.
[6] *People v. Sandoval*, 34 N.Y.2d 413 (N.Y. 1974).

4

to his defense, (7) the evidence was legally insufficient, (8) the verdict was against the weight of the evidence, (9) the prosecution failed to disprove justification beyond a reasonable doubt, and (10) the trial court erred in permitting the prosecution to introduce Petitioner's statement. Resp't's Ex. 5, D.E. 23. On October 13, 2009, the Appellate Division, Second Department, affirmed Petitioner's conviction. *People v. Tyrell*, 67 A.D.3d 827 (2d Dept. 2009). On May 19, 2010, the New York State Court of Appeals denied Petitioner's application for leave to appeal. *People v. Tyrell*, 14 N.Y.3d 893 (2009).

On May 6, 2011, Petitioner *pro se* timely filed his original habeas petition challenging his 2006 conviction. Pet., at 1, D.E. 1. The Petition asserted the following seven grounds for relief: (1) Petitioner was deprived of the due process of law and a fair trial when the trial court permitted the prosecutor to cross-examine Petitioner regarding a 1988 misdemeanor conviction; (2) Petitioner was deprived of due process and a fair trial when the prosecutor suggested that marijuana is part of Jamaican culture; (3) Petitioner was deprived of due process and a fair trial by the state court's "cumulative evidentiary errors"; (4) Petitioner's Fifth Amendment rights were violated when the police engaged in improper interrogation after Petitioner requested to speak to an attorney; (5) the state court unreasonably applied clearly established Supreme Court precedent in rejecting Petitioner's affirmative defense of justification and in failing to "weight [sic] the evidence most favorable to Petitioner"; (6) Petitioner's "remaining claims not address [sic] herein" entailed an unreasonable application of Supreme Court precedent or were contrary to such precedent; and (7) Petitioner was deprived of the effective assistance of appellate counsel by counsel's failure to claim on appeal that petitioner's trial counsel provided the ineffective assistance of counsel. Pet., at 2-3, D.E. 21. Petitioner also sought a stay so that he could exhaust an additional sixth amendment claim in state court. Pet., at ¶ 12-13, D.E. 1.

In a letter filed on August 24, 2011, Petitioner reiterated his request for a stay of the petition. D.E. 10. In a letter response filed on September 7, 2011, Respondent sought "guidance" from the Court as to how to proceed given Petitioner's stay application, and noted that Petitioner failed to establish good cause as to why he had failed to exhaust his claim in state court and that a "stay should not issue when an unexhausted claim is 'plainly meritless.' " D.E. 11. In an Order dated September 9, 2011, this Court granted Petitioner's application for a stay. D.E. 12.

On or about October 3, 2011, Petitioner moved in the Appellate Division, Second Department, for a writ of error *coram nobis*. Resp't's Ex. 12, D.E. 23. Petitioner asserted that he had been deprived of the effective assistance of appellate counsel due to counsel's failure to assert that Petitioner's trial counsel was ineffective for failing to raise a statute of limitations defense. *Id.* at 1. On February 28, 2012, the Appellate Division, Second Department, denied Petitioner's motion and held that Petitioner "failed to establish that he was denied the effective assistance of appellate counsel." Resp't's Ex. 14, D.E. 23. On June 14, 2012, the New York State Court of Appeals denied Petitioner's application for leave to appeal the denial of his *coram nobis* application. Resp't's Ex. 15, D.E. 23

On July 18, 2012, this Court granted Petitioner forty-five days to file and serve his amended petition. D.E. 15. On October 18, 2012, Respondent requested that the Court find that Petitioner had defaulted by failing to submit an amended petition, and further requested permission to answer Petitioner's original petition. D.E. 17. On October 18, 2012, this Court denied Respondent's request and granted Petitioner forty-five additional days to file an amended petition. D.E. 16. On December 12, 2012, Petitioner filed an amended petition. D.E. 21. In his amended petition, Petitioner reiterated the claims raised in his initial petition, and added the

claim that he was deprived of the effective assistance of appellate counsel due to counsel's failure to assert that Petitioner's trial counsel was ineffective for failing to raise a statute of limitations defense.[7]  On January 7, 2013, Respondent submitted an Affidavit and Memorandum of Law in opposition to the amended petition.

## DISCUSSION

**I.**     **Applicable Law**

"Habeas review is an extraordinary remedy." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (citing *Reed v. Farley*, 512 U.S. 339, 354 (1994)).  To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.

Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.  If a petitioner has met these threshold requirements, a federal district court generally may hear an application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with § 2254(d).

Under the AEDPA, all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus.  28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971).  In the interests of comity and expeditious

---

[7] Petitioner also moved for appointment of counsel.  On January 30, 2013, citing the factors enumerated in *Hodge v. Police Officers*, 802 F.2d 58 (2d Circ. 1986), this Court denied Petitioner's motion without prejudice.  D.E. 37.

federal review, "[s]tates should have the first opportunity to address and correct alleged

violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731

(1991); *see also Daye v. Attorney Gen. of the State of New York*, 696 F.2d 186, 190-91 (2d Cir.

1982). The exhaustion requirement of the federal habeas corpus statute is set forth in 28 U.S.C.

§ 2254(b)(1), (c):

> (b)(1) An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted unless
> it appears that–
>> (A) the applicant has exhausted the remedies available in the courts
>> of the State; or
>> (B) (i) there is an absence of available State corrective process; or
>>> (ii) circumstances exist that render such process ineffective to
>>> protect the rights of the applicant. . . .
> (c) An applicant shall not be deemed to have exhausted the remedies
> available in the courts of the State, within the meaning of this section, if he
> [or she] has the right under the law of the State to raise, by any available
> procedure, the question presented.

28 U.S.C. § 2254(b)(1), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion

doctrine has been satisfied. *See Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981). First, the

petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate

state courts. *Picard*, 404 U.S. at 275-76. "A claim has been 'fairly presented' if the state courts

are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in

federal court.' " *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (quoting *Daye*, 696 F.2d at

191). In other words, the claim must have been presented in a way that is "likely to alert the

court to [its] federal nature." *Daye*, 696 F.2d at 192. The fair presentation requirement is

satisfied if the state court brief contains phrases, such as "under the Due Process Clause" or

"under the Constitution," that point to the petitioner's reliance on the United States Constitution

as his or her legal basis for relief. *Klein*, 667 F.2d at 282 (internal citations omitted). A claim

may be considered "fairly presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the following: (1) relied on pertinent federal cases that employ constitutional analysis, (2) relied on pertinent state cases that apply constitutional analysis in like fact situations, (3) asserted his or her claim in terms so particular as to call to mind specific constitutionally-protected rights; or (4) alleged a fact pattern that falls within the mainstream of constitutional litigation. *See Daye*, 696 F.2d at 194; *Irving v. Reid*, 624 F. Supp. 787, 789 (S.D.N.Y. 1985). A claim that has not been "fairly presented" in state court is procedurally defaulted and is precluded from federal habeas review, unless Petitioner can show cause for the default, and prejudice resulting from the alleged violation of federal law, or that a fundamental miscarriage of justice will occur if the claim is not considered. *Coleman*, 501 U.S. at 750; *Galdamez v. Keane*, 394 F.3d 68, 73-74 (2d Circ. 2005).

Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court. *Klein*, 667 F.2d at 282. Where a petitioner fails to present his or her federal constitutional claim to the highest state court, the claim cannot be considered exhausted. *Id.* (citing *Williams v. Greco*, 442 F. Supp. 831, 833 (S.D.N.Y. 1977)). There is, however, another avenue available for exhaustion purposes. A petitioner who has failed to exhaust state remedies by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction. *See id.*; *see also Johnson v. Metz*, 609 F.2d 1052, 1055-56 (2d Cir. 1979) (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals in New York state courts to proceed by filing a motion to vacate judgment pursuant to N.Y. Crim. Proc. Law § 440.10). If collateral relief is denied, the

petitioner may satisfy the exhaustion requirement by employing the state appellate procedures available for review of such denial. *Klein*, 667 F.2d at 282-83.  A petitioner "need not have invoked every possible avenue of state court review." *Keane*, 394 F.3d at 73.  Instead, a petitioner must give the state courts "one full opportunity" to resolve any constitutional issues by invoking one complete round of the State's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  A habeas petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court unless he or she can demonstrate cause and prejudice or a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

Even where a timely and exhausted habeas claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon an "adequate and independent finding of a procedural default" to deny it. *Harris*, 489 U.S. at 262; *see also Coleman*, 501 U.S. at 730; *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995).  A state court decision will be "independent" when it "fairly appears" to rest primarily on state law. *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) (citing *Coleman*, 501 U.S. at 740).  A decision will be "adequate" if it is " 'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).

Provided a claim meets all procedural requirements, the federal court must apply AEDPA's deferential standard of review when a state court has decided a claim on the merits. *See Torres v. Berbary*, 340 F.3d 63, 68 (2d Cir. 2003).  Under AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

> granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.' " *Torres*, 340 F.3d at 68 (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).

"[A]n unreasonable application of clearly established Supreme Court precedent occurs when a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Torres*, 340 F.3d at 68 (internal quotation marks and citation omitted). The federal court must determine whether the state court's application of clearly established federal law was objectively unreasonable. *Id.* at 68-69 (citation omitted). In the Second Circuit, "the objectively unreasonable standard of § 2254(d)(1) means that the petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Id.* (internal quotation marks and citations omitted).

## II.   Petitioner's Claims for Habeas Relief

### A.   Petitioner's Claim Regarding the People's Cross-Examination into his 1998 Marijuana Conviction

Petitioner asserts that he was deprived of due process and a fair trial when the prosecution "vindictivenessly [sic] cross-examined Petitioner about a 1988 Misdemeanor Conviction."  Liberally construing this assertion, as the Court must (*see Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474-75 [2d Cir. 2006]), Petitioner's claim incorporates three separate, but related claims raised in Petitioner's appellate brief: the trial court (1) erred under *Sandoval* in permitting the prosecution to cross-examine Petitioner regarding a 1988 misdemeanor conviction, (2) lacked discretion to modify its *Sandoval* ruling once Petitioner had relied on that ruling in determining whether to testify, and (3) erred in determining that Petitioner had opened the door to questioning into the facts underlying his 1988 conviction.  Am. Pet., at 2-3, D.E. 21.

The Supreme Court has made clear that a federal court may not grant habeas relief on the basis that a state court erred in applying state law.  *Estelle v. Mcguire,* 502 U.S. 62 (1991).  In order to prevail on a claim that a state-law evidentiary error deprived a petitioner of due process or a fair trial under the Fourteenth Amendment, a petitioner must show "that the error was so pervasive as to have denied him [or her] a fundamentally fair trial. . . ." *Collins v. Scully*, 755 F.2d 16, 18-19 (2d Cir. 1985); *see also Smith v. Greiner*, 117 F.App'x. 779 (2d Cir. 2004).  To satisfy this burden, a petitioner must show that the "erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Collins*, 755 F.2d at 19.  Put differently, the error "must have been 'crucial, critical, highly significant.' " *Id.* (citation omitted).

"*Sandoval* is a creature of state law" and both an initial *Sandoval* determination, as well as a court's subsequent, mid-trial modification of a *Sandoval* ruling, do not implicate federal law.

*Jernigan v. Brown*, 08 Civ. 9289 (JGK) (DF), 2012 WL 2377082 at *18 (S.D.N.Y. May 1, 2012); *see also Wilson v. Bradt*, 13 Civ. 6937 (KBF), 2014 WL 4116960 at *10-11 (S.D.N.Y. August 20, 2014).[8]  This reality is reflected in Petitioner's appellate brief which, while asserting the deprivation of a constitutional right to a fair trial, cites no federal case-law in support of Petitioner's *Sandoval* claims and relies solely on state cases dealing with state evidentiary law. Since Petitioner's federal claim turns solely on matters of state law, he may only prevail on his instant petition by demonstrating that the trial court's *Sandoval* determinations deprived him of a *"fundamentally fair* trial." *Jackson v. Lee*, 10 Civ. 3062 (LAK) (AJP), 2010 WL 4628013 at *22-23 (S.D.N.Y. Nov.16, 2010) (emphasis in original), citing *Rosario v. Kuhlman*, 839 F.2d 918, 924-925 (2d Cir. 1988).  Even assuming, arguendo, that the state-court's *Sandoval* rulings were erroneous, Petitioner is unable to meet this high burden.

The record, viewed as a whole, establishes strong evidence of Petitioner's guilt, and the prosecution's brief cross-examination of Petitioner about a 1988 misdemeanor marijuana conviction was not "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Collins*, 755 F.2d at 19. Two witnesses, including one of the victims, testified that in the early morning of December 22, 1991, Carlos Robinson and Petitioner had an argument outside a house party about the collection of the entrance fee.  After Ansel Barrett attempted unsuccessfully to stop the argument, Robinson threw a bottle toward Petitioner.  Though the bottle did not hit Petitioner, Petitioner fired a gun multiple times toward Carlos Robinson from a distance of approximately five feet.  None of these witnesses testified that they observed any other individual in possession of a firearm that

---

[8] In the spirit of *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), copies of all unpublished decisions cited herein have been provided to Petitioner by the Court.

night.  T. 648-61, 673-74, 699, 700, 777-88, 818, D.E. 28, 32.  This testimony was largely

corroborated by a third witness, the only discrepancy being that, according to the third witness,

Petitioner aimed the gun toward Barrett, not Robinson, prior to firing.  T. 572-79, D.E. 32.  The

jury also learned that, shortly after the shooting, Petitioner admitted to his girlfriend that he "got

into some trouble."  He told her that he was collecting money at the door of a party and a man

did not want to pay to come in; when the man threw a bottle at Petitioner, Petitioner shot the

man.  T. 606-08, D.E. 32.  Furthermore, the jury learned that Petitioner was apprehended years

later, in Florida, where he was using an assumed name.  T2. 16-30, D.E. 30.

By contrast, Petitioner testified that following an argument between Robinson and

Barrett, Robinson threw a bottle at Petitioner, which hit him in the chest. Petitioner then heard a

shot and saw Barrett fall.  Robinson then reached into his coat and it appeared to Petitioner that

Robinson was pulling something out to aim at him.  Petitioner then took out a gun, aimed it at

Robinson and fired two shots.  Petitioner further testified that he did not intend to cause the death

of Barrett or Robinson, and that when he fired toward Robinson, he did so in self-defense.  T2.

104-23, D.E. 30.

Given the numerous prosecution witnesses, the consistency of the prosecution witnesses'

testimony, the gravity of the charges, and the stark contrast between Petitioner's testimony and

the testimony of the prosecution's various witnesses, it is inconceivable that the jury convicted

Petitioner of Manslaughter in the First Degree, Assault in the First Degree, and related charges,

based on the knowledge that Petitioner possessed marijuana years earlier in 1988.  This is

particularly true given that all of the prosecution's civilian witnesses who observed the shooting

admitted to having criminal records.  T. 565, 676-79, 682-83, 776-77, 833, 834, 928, D.E. 28-29,

32.  Moreover, these witnesses' convictions were either equivalent to or more severe than

Petitioner's misdemeanor marijuana conviction.  Thus, this was not a situation where Petitioner's

credibility, potentially marred by a previous conviction, was pitted against witnesses with

unblemished records.  Additionally, the trial court specifically instructed the jury that they were

not permitted to rely on Petitioner's prior conviction as proof that he committed the crimes with

which he was charged, and there is no reason to believe that the jury was unable to follow this

instruction.  T. 1143.  *See Herring v. Meachum,* 11 F.3d 374, 378 (2d Cir. 1993).  Moreover,

"[a]bsent evidence to the contrary, we must presume that juries understand and abide by a[]

court's limiting instructions."  *U.S. v. Downing*, 297 F.2d 52, 59 (2d Cir. 2002) (parallel citation

and parentheticals omitted), citing *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993); *see also*

*Shotwell Mfg. Co. v. United States,* 371 U.S. 341, 367 (1962) (When a limiting instruction is

clear, "[i]t must be presumed that the jury conscientiously observed it.").  Put simply,

Petitioner's 1988 marijuana conviction was not so "crucial, critical, [and] highly significant" that

its introduction, even if erroneous, deprived Petitioner of his fundamental right to a fair trial.

*Collins*, 755 F.2d at 19 (citation omitted).  Therefore, I conclude, and respectfully recommend

that Your Honor should conclude, that Petitioner's claims regarding the trial court's *Sandoval*

rulings should be denied.

### B. Petitioner's Claim That the Prosecution's Inquiry into the Relationship Between Marijuana use and Jamaican Culture was Improper.

Petitioner asserts that the state court "contradicted and unreasonably applied clearly

established" due process law and made "unreasonable" fact-finding by "upholding" the

prosecutor's question, "Isn't it a fact that marijuana is a part of Jamaican culture?"  Am. Pet., at 2,

D.E. 21.  In rejecting this claim on direct appeal, the Appellate Division, Second Department,

held that Petitioner's "remaining contention does not require reversal," and cited to *People v.*

*Crimmins*, 36 N.Y.2d 230 (1975), a New York Court of Appeals case that sets out the New York and federal standards for harmless error.

Petitioner failed to fairly present the federal nature of this claim in state court. At trial, Petitioner's counsel objected to the prosecutor's line of questioning on relevancy grounds and made no mention of a federal constitutional violation. Similarly, on direct appeal, Petitioner did not rely on any federal cases and did not engage in any type of constitutional analysis. Rather, he relied on a single state case, *People v. Perez*, 40 A.D.3d 113 (2d Dept. 2007) – which does not appear to exist. Resp't's Ex. 5 at 34, D.E. 23. While Petitioner's appellate brief, and his application for leave to appeal to the New York State Court of Appeals make cursory references to a violation of defendant's "right to a fair trial," these assertions are far too vague to fairly present a federal claim. *Daye*, 696 F.2d at 193 ("Alleging lack of a fair trial does not convert every complaint about evidence or a prosecutor's summation into a federal due process claim"); *Petrucelli v. Coombe*, 735 F.2d 684, 688 (2d Cir. 1984).

Furthermore, Petitioner did not specifically assert his claim in state court "in terms so particular as to call to mind specific constitutionally-protected rights" or allege "a fact pattern that falls within the mainstream of constitutional litigation." *Id.* Although Petitioner, in his instant application, asserts that the prosecutor's line of questioning "has no relevance" and, thus, deprived him of his constitutional right to a fair trial, his appellate brief, reply, and leave application to the New York State Court of Appeals made no mention of relevancy as a ground for relief. In any event, whether evidence is inadmissible on relevancy grounds is a question of state law. *See Colon v. Johnson*, 19 F.Supp.2d 112, 117-118 (S.D.N.Y. 1998) (finding unexhausted a petitioner's claim that the admission of certain testimony was a due process violation where the petitioner's state court filings asserted that the evidence was inadmissible on

relevancy grounds and did not cite any federal cases or engage in any constitutional analysis).[9]

Indeed, while the admission of evidence that is "totally without relevance" can constitute

constitutional error if it is unduly prejudicial (*Brown*, 673 F.Supp.2d at 93), or if it deprives a

petitioner of a fundamental right to a fair trial (*Colon*, 19 F.Supp.2d at 117-18), there is nothing

in Petitioner's state-court filings that would have alerted the Appellate Division or New York

State Court of Appeals that Petitioner was raising such a claim.[10]  To the contrary, Petitioner

simply asserted that the prosecution's suggestion was "improper," that the trial court "erred" in

overruling the defense objection, and that he was deprived of a fair trial, without ever specifying

the nature of the error, impropriety, or unfairness.  Accordingly, it cannot be said that Petitioner

presented " 'the same federal constitutional claim[s] that he now urges upon the federal courts'…

---

[9] None of the cases cited by Petitioner suggest otherwise.  In *Dawson v. Delaware*, 503 U.S. 159 (1992), for instance, the Supreme Court evaluated the constitutionality of introducing a stipulation regarding a defendant's association with the Aryan Brotherhood at a sentencing hearing.  The Court held that since reference to the Aryan Brotherhood had no relevance to the defendant's sentencing, its introduction violated the defendant's First Amendment right of association.  The analysis in *Dawson* has no bearing on the question of whether an implication embedded in a prosecutor's question – that a defendant is more likely to use marijuana because he is Jamaican - implicates a question of federal constitutional law.  *See Flores v. Ercole*, 2010 WL 3951048 (E.D.N.Y. October 7, 2010) (noting that a petitioner's claim under *Dawson* that his First and Fourteenth amendment rights were violated by expert witness testimony regarding gang violence implicated state evidentiary law).  Similarly, in *Nelson v. Brown*, 673 F.Supp.2d 85, 93 (E.D.N.Y. 2009), also relied on by Petitioner (Am. Pet., at 5, D.E. 21), the court held that the admissibility of a photograph was a question of state law.

[10] The language of the Appellate Division decision suggests that the Appellate Division did not identify Petitioner's claim regarding the prosecutor's line of questioning as one of constitutional dimension. In denying Petitioner's claim on harmless error grounds, the Appellate Division never expressly identified the nature of the error in question, and simply cited to *Crimmins*, a New York state case that includes both the federal and New York State standards for harmless error analysis. This stands in stark contrast to cases in which the Appellate Division explicitly or implicitly finds a constitutional violation, and then holds such violation to be harmless. *See e.g. Perkins v. Herbert*, 596 F.3d 161 (2d Cir. 2010) (discussing "the standard of review in a case where a state appellate court has found that a state trial court committed a constitutional violation but has held that the violation was harmless").

'to the highest court in the pertinent state.' " *Artuz*, 269 F.3d at 89 (2d Cir. 2001) (internal citations omitted).

Having failed to fairly present this record-based federal claim in either his direct appeal or his application for leave to appeal to the New York Court of Appeals, and having asserted no justifiable reason for failing to raise the claim on direct appeal, Petitioner lacks a state procedural outlet to raise the claim. *See Artuz*, 269 F.3d at 90-91 (2d Cir. 2001) ("Petitioner was entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals, both of which he pursued long ago"), citing N.Y.Crim. Proc. Law § 450.10(1); N.Y. Court R. § 500.10(a). Petitioner's claim, therefore, is deemed exhausted, but is procedurally defaulted. *Id.* at 90. Additionally, Petitioner has failed to allege, let alone show cause for, the default, and he has failed to show any resulting prejudice; he has also failed to allege or demonstrate that "failure to consider the claim will result in a miscarriage of justice." *Id.* Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that Petitioner's claim regarding the prosecutor's implication that marijuana use is associated with Jamaican culture should be denied.

Alternatively, assuming, arguendo, that the fact pattern asserted by Petitioner – a suggestion by the prosecutor that marijuana use and Jamaican culture were related – "falls within the mainstream of constitutional litigation" (*Daye*, 696 F.2d at 194),[11] and assuming arguendo that the Appellate Division's reliance on *Crimmins* signaled a federal harmless error analysis,[12]

---

[11] *Cf. Everson v. Chapdelaine*, 12 Civ. 273 (RNC), 2015 WL 1456756 (D.Ct. March 30, 2015) ("But read in the spirit of solicitude owed a *pro se* petition, the claim is best understood to raise again the argument raised on direct appeal: that the admission of propensity evidence at trial violated due process. This claim is cognizable on federal habeas").

[12] At least one federal court has described *Crimmins* as a case which "incorporates the standard set out by the Supreme Court in *Chapman v. California* for determining whether a

Petitioner's claim still fails.  The Second Circuit has not yet "clearly established" the standard by which a federal court should review a state court's determination that a trial court committed a harmless constitutional error. *Perkins*, 596 F.3d at 175.  Instead, the Second Circuit has identified the two standards of review applicable in such situations, and explicitly (and repeatedly) declined to adopt a single standard, on the ground that in each case that has come before the Second Circuit, the petitioner's claim failed under either standard. *Id.*

The first standard is whether " 'in light of the record as a whole, [the constitutional violation] had *substantial* and *injurious* effect or influence' in securing the defendant's conviction." *Id.*  This standard is " 'less onerous' than the harmlessness test generally used on direct review of a constitutional error." *Id.*  Under the second standard, "a federal court must assess whether the state appellate court acted reasonably in determining that the error was 'harmless ... beyond a reasonable doubt.' " *Id.*  (internal citations omitted). Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* (internal citations omitted).

Like the cases that have come before the Second Circuit, this Court need not attempt to resolve which of these standards (or some combination of the two) is the correct standard, since the error alleged by Petitioner was harmless under either standard.  As stated (*see supra* pp. 13-16), given the nature of the evidence against Petitioner and the seriousness of the charges, the prosecutor's implication that marijuana use was associated with Jamaican culture did not have a

---

constitutional error was harmless." *Williams v. Smith*, 10 Civ. 3043 (JG), 2011 WL 96735 at 19 (E.D.N.Y. January 11, 2011).

"*substantial* and *injurious* effect or influence" on Petitioner's conviction for Manslaughter in the First Degree, Assault in the First Degree, and related charges.   *Id.* at 176 (internal citations omitted) (emphasis in original).   For the same reasons, the Appellate Division's harmless error determination was not objectively unreasonable.[13]   Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that Petitioner's claim regarding the prosecutor's implication that marijuana use is associated with Jamaican culture should be denied.

### C.   Petitioner's Fifth Amendment Claim

Petitioner claims that his constitutional rights were violated when he was subjected to custodial interrogation after invoking his right to counsel, thereby rendering his resulting statement inadmissible.   Am. Pet., at 2, D.E. 21.   In rejecting this claim on direct appeal, the Appellate Division held as follows:

> The County Court properly denied that branch of the defendant's omnibus motion which was to suppress the statement he made to the deputy United States Marshal. 'Volunteered statements are admissible provided the defendant spoke with genuine spontaneity and not the result of inducement, provocation, encouragement or acquiescence, no matter how subtly employed'

*Tyrell*, 67 A.D.3d at 828 (internal citations omitted).   Petitioner, relying solely on *Wood v. Ercole*, 644 F.3d 83 (2d Cir. 2011), asserts that the Appellate Division's determination was contrary to federal law because once he requested counsel, "all interrogation must stop until an

---

[13] Similarly, to the extent Petitioner's claim below is construed as a claim that the trial court's overruling of the defense objection to the prosecutor's line of questioning constituted such an egregious violation of state evidentiary rules that it deprived Petitioner of his fundamental right to a fair trial (*see e.g. Brown*, 673 F.Supp.2d at 91), this claim fails for the same reasons. Namely, this line of questioning was not so "crucial, critical, [and] highly significant" that its introduction, even if erroneous, deprived Petitioner of his fundamental right to a fair trial. *Collins*, 755 F.2d at 19 (citations omitted).

attorney is provided or the suspect *reinitiates conversation*," and that he did not reinitiate

conversation. Am. Pet., at 2, D.E. 21 (emphasis in original).

The controlling Supreme Court precedent is *Rhode Island v. Innis*, 446 U.S. 291 (1980).

In *Innis*, the Supreme Court reiterated the rule established in *Miranda v. Arizona*, 384 U.S. 436

(1966), that once a defendant in custody invokes his or her right to counsel, the police may not

engage in custodial interrogation of that defendant. *Innis*, 446 U.S. at 300. The *Innis* Court

clarified that custodial interrogation refers to direct questioning or its "functional equivalent,"

including "any words or actions on the part of the police (other than those normally attendant to

arrest and custody) that the police should know are reasonably likely to elicit an incriminating

response from the suspect." *Id.* at 301.[14]

Here, both the trial court and the Appellate Division correctly identified these governing

principles. The trial court identified the legal standard as whether a statement "can be said to

have been triggered by police conduct, which should reasonably have been anticipated to evoke a

declaration from the Defendant." H. 33, D.E. 25. Similarly, the Appellate Division evaluated

whether Petitioner's statement was made with "genuine spontaneity" or "was the result of

'inducement, provocation, encouragement or acquiescence, no matter how subtly employed.' "

*Tyrell*, 67 A.D.3d at 828. These standards are functionally equivalent to the standard articulated

---

[14] *Ercole*, by contrast, dealt with the question of whether a defendant's statement, "I think
I should get a lawyer," constituted an invocation of the defendant's right to counsel – a question
that was not at issue in Petitioner's case. While the *Ercole* court broadly stated that "once a
suspect requests counsel, all interrogation must stop until an attorney is provided or the suspect
reinitiates conversation," the Court was not called upon to address whether a police officer's
statement was likely to elicit an incriminating response or the admissibility of a Petitioner's
spontaneous statement made subsequent to the invocation of the right to counsel. *Ercole*,
therefore, would only be relevant to Petitioner's claim if the contested issue was whether he had
unequivocally invoked his right to counsel. Since Petitioner's claim does not present that issue,
*Ercole* is not germane to his argument.

in *Innis*.  Therefore, both the hearing court and the Appellate Division identified the correct

governing principle with respect to Petitioner's constitutional claim.

Furthermore, the determinations of the hearing court and the Appellate Division were

reasonable applications of *Innis* given the facts elicited at the pre-trial *Huntley* hearing.[15]  At the

hearing, Deputy United States Marshal David Rosen testified as follows: On September 21,

2005, Rosen arrested Petitioner in Florida.  While Petitioner was being transported he asked

"What's this about," and Rosen responded, "We'll talk about it when we get to the station."  Once

at the station, Petitioner was placed in an interview room and advised of his *Miranda* rights, at

which time Petitioner invoked his right to counsel.  Soon thereafter, Rosen informed Petitioner

that "he was being arrested for a homicide that occurred in Elmsford, New York, in the early

90's."  Petitioner stated that "he was there, but he didn't do it, and he got scared, and he ran."  H.

15, D.E. 25.

In an oral decision, the hearing court credited Rosen's testimony, found that Rosen's

statement to Petitioner was not designed or calculated to elicit a response from Petitioner, and

held that Petitioner's statement was spontaneous and voluntarily made beyond a reasonable

doubt.  H. 15, D.E. 25.  Similarly, the Appellate Division held that Petitioner's statement was

admissible because it was made with "genuine spontaneity 'and not the result of inducement,

provocation, encouragement or acquiescence, no matter how subtly employed.' " *Tyrell*, 67

A.D.3d at 828. These factual determinations, which are presumed to be correct (*see* 28 U.S.C.

§2254(e)(1)), are fully consistent with *Innis* and its progeny.[16]  The Second Circuit has

specifically noted that "the *Innis* definition of interrogation is not so broad as to capture within

---

[15] *People v. Huntley*, 15 N.Y.2d 72 (1965).

[16] They are also entirely consistent with *Ercole*.

*Miranda'* s reach all declaratory statements by police officers concerning the nature of the charges against the suspect and the evidence relating to those charges." *Acosta v. Artuz,* 575 F.3d 177, 191 (2d Cir. 2009) quoting *Caputo v. Nelson,* 455 F.3d 45, 50 (1st Cir. 2006) (internal quotation marks omitted)); *see also, United States v. Payne,* 954 F.2d 199, 202 (4th Cir.), *cert. denied,* 503 U.S. 988 (1992). *United States v. Wipf,* 397 F.3d 677, 685 (8th Cir.) (officer's explanation to suspect of charges against him did not amount to interrogation), *cert. denied,* 546 U.S. 835 (2005); *United States v. Conley,* 156 F.3d 78, 83 (1st Cir. 1998) ("law enforcement officer's mere description of the evidence and of potential charges against a suspect, in direct response to the suspect's importuning, hardly can be classified as interrogatory"); *Enoch v. Gramley,* 70 F.3d 1490, 1500 (7th Cir. 1995) ("[b]riefly reciting to a suspect in custody the basis for holding him, without more, cannot be the functional equivalent of interrogation"), *cert. denied,* 519 U.S. 829 (1996). Thus, the Appellate Division's determination that Petitioner's statement was made spontaneously and was "not the result of inducement, provocation, encouragement or acquiescence, no matter how subtly employed" was not an unreasonable determination of the facts in light of the evidence presented, or a decision that was contrary to, or constituted an unreasonable application of, federal law - in this instance, the law established by the Supreme Court in *Innis.* Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that Petitioner's Fifth Amendment claim should be denied.

## D. Petitioner's Weight of the Evidence and Legal Sufficiency Claims.

Petitioner claims that the state court unreasonably applied Supreme Court precedent in rejecting his claim that his conviction was against the weight of the evidence and legally insufficient.[17] Am. Pet., at 2, D.E. 21. Petitioner's claim that his conviction was against the

---

[17] On direct appeal Petitioner generally argued that the evidence presented was legally insufficient and that his conviction was against the weight of the evidence. He separately argued

weight of the evidence is not cognizable on habeas review because it is a "pure state law claim. . . ." *Douglas v. Portuondo,* 232 F.Supp.2d 106, 116 (S.D.N.Y. 2002) (quotation marks and citations omitted); *see also Garbez v. Greiner,* 01 Civ. 9865 (LAK) (GWG), 2002 WL 1760960 at *8 (S.D.N.Y. July 30, 2002). I therefore recommend that Petitioner's "weight of the evidence" argument be denied as unreviewable by a federal habeas court. *See McGuire,* 502 U.S. at 68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States").

Petitioner's claim that the evidence was legally insufficient to support his conviction, while cognizable on habeas review, was decided by the state court in the first instance on adequate and independent state grounds. The Appellate Division, Second Department, in affirming the underlying conviction, stated the following: "The defendant's challenge to the legal sufficiency of the evidence is unpreserved for appellate review." *Tyrell,* 67 A.D.3d at 827 (2d Dept. 2009). In support of the conclusion that this claim was unpreserved, the court cited N.Y.Crim. Proc. Law § 470.05(2), which is referred to as New York's "contemporaneous objection" or "preservation" rule. *See Lewis v. Lee,* 11 Civ. 478 (CS) (LMS) (S.D.N.Y. June 29, 2015) *report and recommendation adopted,* 11 Civ. 478 (CS), 2015 WL 5751396, at 7 (S.D.N.Y. Sept. 29, 2015) (citations omitted). This rule requires defense counsel to make a contemporaneous objection to any alleged legal error committed during a criminal trial. *Id.*; N.Y.Crim. Proc. Law § 470.05(2). Failure to comply with this rule constitutes an independent and adequate state ground that may preclude federal habeas review. *See Brown v. Ercole*, 353 Fed. Appx. 518, 520 (2d Cir. 2009); *Garcia v. Lewis*, 188 F.3d at 77–78.

---

that the evidence was legally insufficient and against the weight of the evidence because the People failed to disprove his defense of justification beyond a reasonable doubt. This Court liberally construes Petitioner's instant claim as raising all of these arguments.

Since the Appellate Division found this claim to be unpreserved pursuant to N.Y.Crim. Proc. Law § 470.05(2), an adequate and independent state ground, this Court may not review the claim unless Petitioner is able to demonstrate cause and prejudice for his procedural default or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 729, 750. In the instant case, Petitioner has made no showing of cause or prejudice, and there is no basis to conclude that a fundamental miscarriage of justice would result in the absence of federal review. Therefore, I recommend that this claim should be denied.[18]

### E. Petitioner's Claim That the Lower Court committed "Cumulative Evidentiary Errors"

Petitioner asserts that he is entitled to habeas relief due to the lower court's "cumulative evidentiary errors." Am. Pet., at 2, D.E. 21. Petitioner, however, fails to identify the evidentiary errors to which he refers. Nevertheless, liberally construing Petitioner's claim, as the Court must, the Court interprets Petitioner's claim to be that the cumulative effect of the evidentiary errors he alleges in his petition deprived him of due process and a fair trial. Those alleged errors include Petitioner's *Sandoval* claim, his Fifth Amendment claim, and his claim that the prosecutor impermissibly implied a relationship between Jamaican culture and using marijuana.[19]

Petitioner failed to present this claim in state court. At no point did Petitioner's appellate brief or leave application to the Court of Appeals identify cumulative trial errors as depriving Petitioner of his right to a fair trial or due process. Since Petitioner failed to present this record-

---

[18] Even assuming arguendo that Petitioner's legal sufficiency claim was preserved and that a weight of the evidence claim was cognizable on habeas review, both arguments would be foreclosed by the fact that Petitioner failed to present these argument to the New York State Court of Appeals. Since there is no other procedural mechanism for Petitioner to raise these record-based arguments in state court at this time, they are procedurally defaulted. *See Grey*, 933 F.2d at 120; *Smith v. Duncan*, 411 F.3d 340, 345 (2d Cir.2005).

[19] Petitioner's weight of the evidence, legal sufficiency, and ineffective assistance of appellate counsel claims do not fall into the category of "evidentiary errors" in the ordinary sense of that term.

based claim in either his direct appeal or his application for leave to appeal to the New York

Court of Appeals, and since Petitioner has failed to assert a justifiable reason for failing to raise

this claim in state proceedings, Petitioner lacks a state procedural outlet to raise the claim. *See*

*Artuz*, 269 F.3d at 90-91 (2d Cir. 2001) ("Petitioner was entitled to one (and only one) appeal to

the Appellate Division and one request for leave to appeal to the Court of Appeals, both of which

he pursued long ago"), citing N.Y.Crim. Proc. Law § 450.10(1); N.Y. Court R. § 500.10(a).

Petitioner's claim, therefore, is deemed exhausted, but is procedurally defaulted. *Id.* at 90.

Additionally, Petitioner has failed to show cause for the default and prejudice; nor has he alleged

or demonstrated that "failure to consider the claim will result in a miscarriage of justice." *Id.*

In any event, Petitioner's claim also fails on the merits. "Habeas relief may be justified

based on the cumulative effect of errors that, standing alone, would not warrant the granting of a

new trial." *See United States v. Lumpkin*, 192 F.3d 280, 290 (2d Cir.1999). To prevail on such a

claim, a petitioner mush show that the individual errors "are actually *errors*" and that the

cumulative effect of the errors was "so prejudicial that they rendered petitioner's trial[]

fundamentally unfair." *Joyner v. Miller*, 01 Civ.2157 (WHP) (DF), 2002 WL 1023141 at *13

(S.D.N.Y. January 7, 2002) (emphasis in original). Whether a petitioner received a fair trial

requires an examination of the entire record, "paying particular attention to the nature and

number of alleged errors committed; their interrelationship, if any, and their combined effect;

how the trial court dealt with the errors, including the efficacy of any remedial measures; and the

strength of the prosecution's case." *Id.* (citations omitted).

Here, the only evidentiary claim raised by Petitioner that could potentially be considered

an actual error, was the trial court's overruling of the defense objection to the prosecutor's

insinuation that there was a relationship between Jamaican culture and marijuana use. As stated

(*see supra*, pp. 13-16), this error did not deprive petitioner of a fair trial. Further, a single error, by definition, cannot rise to the level of "cumulative" errors. Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that Petitioner's claim regarding the cumulative effect of the alleged evidentiary errors be denied.

### F. Petitioner's Claim Regarding "Claims Not Address [sic] Herein"

Petitioner claims that the "remaining claims not address [sic] herein" entailed an unreasonable application of fact or law and/or were contrary to Supreme Court precedent. Am. Pet., at 2, D.E. 21. While Petitioner does not specifically assert what "remaining claims" he is referring to, in his reply, Petitioner references this point and alludes to the claims "fully addressed in Petitioner[s] brief...." Reply, at 21, D.E. 38. Therefore, the Court liberally construes Petitioner's claim to be that with respect to the remaining claims raised in his appellate brief, the state court's determination was contrary to or involved an unreasonable application of Supreme Court precedent. A review of Petitioner's appellate brief reveals that the only "remaining" claim from Petitioner's direct appeal that is not specifically raised in Petitioner's instant application as a basis for relief, is his claim that the trial court improperly permitted the prosecution to inquire into Petitioner's 2004 assault conviction. Resp't's Ex. 5 at 34-35, D.E. 23.

Petitioner failed to present this claim to the New York State Court of Appeals. Resp't's Ex. 9, D.E. 23. The Second Circuit has consistently held that a habeas petitioner's omission of claims from his or her application for leave to appeal to the New York State Court of Appeals constitutes a failure to exhaust those claims before the state courts. *Grey*, 933 F.2d at 120; *Smith* 411 F.3d at 345; *see also Jordan v. Lefevre*, 206 F.3d 196, 198 (2d Cir. 2000) (petitioner had not fairly presented his claims to the New York State Court of Appeals where the letter seeking leave to appeal argued "a single claim at length" and made only a "passing reference to possible other

claims to be found in the attached briefs."). Because Petitioner failed to raise this claim before

the New York State Court of Appeals, he may no longer present it before the state courts (*St.*

*Helen*, 374 F.3d at 183-84) and, accordingly, this claim is unexhausted and Petitioner is

procedurally barred from federal habeas review. *Ramirez*, 280 F.3d at 94; *Grey*, 933 F.2d at 120.

Moreover, Petitioner has failed to demonstrate cause for the default and prejudice; nor has he

alleged or demonstrated that "failure to consider the claim will result in a miscarriage of justice."

*Artuz*, 269 F.3d at 90-91. Accordingly, I conclude, and respectfully recommend that Your Honor

should conclude, that Petitioner's claim regarding the claims "not address [sic] herein" be denied.

### G. Petitioner's Ineffective Assistance of Appellate Counsel Claim

Petitioner, relying on *People v. Turner*, 5 N.Y.3d 476 (2005), claims that he was deprived

of the effective assistance of appellate counsel by counsel's failure to assert on direct appeal that

Petitioner's trial counsel failed to raise a dispositive statute of limitations defense to the

submission to the jury of the manslaughter charge. Am. Pet., at 3-6.[20]  In rejecting this claim, the

Appellate Division held that "appellant has failed to establish that he was denied the effective

assistance of appellate counsel." Resp't's Ex. 14, D.E. 23.  This merit-based determination "fails

to explicate a coherent rationale for its rejection of petitioner's claim" and, therefore, this Court

must determine whether the Appellate Division's "ultimate decision was an 'unreasonable

application' of clearly established Supreme Court precedent"; in this case, *Strickland v.*

*Washington*, 466 U.S. 668 (1984).  *Aparicio v Artuz*, 269 F.3d 78, 94 (2d Cir. 2001) (citations

omitted).

---

[20] Petitioner's appellate brief was fifty-six pages long, contained ten points, and was
supported by cogent legal arguments.  Unsurprisingly, therefore, other than his instant assertion,
Petitioner alleges no other flaw in his appellate attorney's performance.  Indeed, in his
application for a writ of error *coram nobis*, he observed that "while appellate counsel filed a
undeniable [sic] well drafted brief, she inexplicably failed to challenge trial counsel's failure to
move to dismiss the manslaughter charge...." Resp't's Ex. 12, D.E. 23

Under *Strickland*, Petitioner must show that his appellate counsel's representation was "fundamentally defective" and that "but for the counsel's errors, there is a reasonable probability that the result of the proceeding would have been different." *Id.*, citing *Strickland,* 466 U.S. at 687. Satisfying this burden is particularly difficult in the habeas context because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S.Ct. 770, 786 (2011). Both the AEDPA and *Strickland* standards are "highly deferential," and "when the two apply in tandem, review is 'doubly' so." *Id.* at 788 (citations omitted). "The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

In *Turner*, the prosecutor requested that the trial court charge the jury with respect to Manslaughter in the First Degree as a lesser included offense. *Turner*, 5 N.Y.3d 476, 478 (2005). Defense counsel opposed on the ground that counsel did not want to "give a jury a chance to compromise." *Id.* The trial court rejected this argument and charged the jury on Manslaughter. Counsel, however, failed to raise the argument that the manslaughter charge was barred by the statute of limitations. *Id.* The New York State Court of Appeals held that the failure to raise the statute of limitations defense constituted ineffective assistance of counsel, and that the failure of appellate counsel to raise this issue on the defendant's direct appeal, was similarly ineffective. *Id.* at 482-483.

Here, by contrast, Petitioner's trial counsel, not the prosecution, specifically requested that the trial court instruct the jury on manslaughter. T2. 179, D.E. 30. This request constituted a permissible waiver of the statute of limitations defense. *See Turner*, 217 F.R.D. 136, 145-46 (E.D.N.Y. 2003) ("Resolution of the instant matter would be a simple matter if Turner had *sought* a charge instructing the jury that it could consider first degree manslaughter as a lesser-

included offense of second degree murder.  A defendant may waive a statute of limitations defense at trial.  New York courts have uniformly found that a defendant who requests a jury instruction on a lesser-included offense in situations like the present one waives the statute of limitations defense with respect to the lesser-included offense") (emphasis in original) (internal citations omitted).  Further, this request was objectively reasonable given the rationale "that defendants should be allowed the option of having the jury consider a lesser charge, where such a charge may be justified by the facts of the case, instead of having to roll the dice with the more serious charge."  *Id.*  Given Petitioner's justification defense, a manslaughter charge was certainly justified by "the facts of the case."  Further, had counsel failed to request that the lesser included offense be charged, and had Petitioner been convicted of the top count - Murder in the Second Degree - Petitioner could have been sentenced to an indeterminate term of imprisonment of from twenty-five years to life on that conviction alone.  Under those circumstances, Petitioner would undoubtedly be arguing that counsel was ineffective for failing to request an instruction on the lesser included charge.  *Brown v. Rick*, 1 Civ. 4310 (DC), 2003 WL 22801397 at *6 (S.D.N.Y. Nov. 25, 2003) ("due to the all-or-nothing nature of proceeding without a lesser included offense instruction, petitioners often challenge the effectiveness of their counsel on the grounds that they *failed* to request such an instruction") (emphasis in original).  Given the existence of an objectively reasonable explanation for defense counsel's conduct, Petitioner has failed to establish that counsel provided ineffective assistance.[21]  Therefore, I conclude, and

---

[21] Petitioner also asserts that if his trial counsel had informed him of "the details of the law, [he] would never considered [sic] the jury to deliberate on the manslaughter count."  Am. Pet., at 5.  This factual assertion regarding trial counsel's off-the-record discussions with Petitioner (or lack thereof), constitutes a distinct claim of ineffective assistance of trial counsel, separate and apart from Petitioner's assertion that trial counsel was per se ineffective for failing to raise the statute of limitations defense under *Turner*.  Further, Petitioner never asserted this factual claim in state court.  Rather, Petitioner's coram nobis application solely referenced the "record-based" claim that trial counsel should have asserted a statute of limitations defense.

respectfully recommend that Your Honor should conclude, that Petitioner's ineffective assistance of appellate counsel claim be denied.

### H. Petitioner's Request for the Appointment of Counsel

Petitioner requests the appointment of counsel for the purposes of his instant habeas petition. Am. Pet., at 10, D.E 21. In an order dated January 30, 2013, this Court denied Petitioner's request for the appointment of counsel "without prejudice to renewal, if Petitioner can later make the requisite showing described below." D.E. 37. In describing that showing, this Court detailed the factors enumerated in *Hodge v. Police Officers*, 802 F.2d at 58 (2d Cir. 1986), and observed that a preliminarily review of Petitioner's motion revealed that it lacked "sufficient merit" to satisfy the "threshold matter" of "whether the indigent litigant has some likelihood of success on the merits of his claims." *Hodge*, 802 F.2d at 60. For the reasons previously stated, after careful review of the amended petition, this Court concludes that Petitioner's claims are procedurally barred, lack merit, or both. Additionally, since Petitioner has not requested a hearing and, upon independent review, a hearing would not be warranted in this case, there is no need to appoint counsel for the purpose of cross-examination. Further, there is no need for a factual investigation, the legal issues presented are not complex, and Petitioner appears capable of presenting his case. *See Hodge*, 802 F.2d at 61-62 ("the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the factfinder, the indigent's ability to present the case, the complexity of the legal issues and any special reason ... why

---

Resp't's Ex. 12 at 8, D.E. 23 ("As this issue was [sic] record-based claim, it is baffling as to why appellate counsel failed to pursue it"). Therefore, that prong of Petitioner's claim in which he argues that trial counsel failed to properly advise him regarding the strategic decision of whether to request a manslaughter charge is unexhausted and will not be considered by the Court. *Artuz*, 269 F.3d at 90-91.

appointment of counsel would be more likely to lead to a just determination").  Accordingly, Petitioner's request for the appointment of counsel is denied.

## CONCLUSION

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the Petition should be dismissed in its entirety.  As the Petition presents no questions of substance for review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue. *See Rodriguez v. Scully*, 905 F.2d 24 (2d Cir. 1990) (*per curiam*); *Alexander v. Harris*, 595 F.2d 87, 90-91 (2d Cir. 1979).  I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. § 1915(a) that an appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, *see* Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Cathy Seibel, at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  Requests for extensions of time to file objections must be made to Judge Seibel.

Dated: 12 | 11 , 2015

     White Plains, NY

                            Respectfully submitted,

                            Lisa Margaret Smith
                            United States Magistrate Judge
                            Southern District of New York

A copy of the foregoing Report and Recommendation has been mailed to the Plaintiff.